UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22423-CIV-JORDAN/McALILEY

R. TRAVIS COLLINS, as Personal
Representative of the Estate of
DAVID KNOWLTON, deceased,

    Plaintiff,
vs.

MARRIOTT INTERNATIONAL, INC., et al,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' RENEWED
MOTION TO COMPEL AND ORDERING *IN CAMERA* INSPECTION**

The Defendants have filed a Renewed Motion to Compel Plaintiff to produce the mental health records of David Knowlton, whose death is the subject of this lawsuit. [DE 98]. Plaintiff filed an opposition [DE 104], and Defendants filed reply [DE 109]. I have reviewed the submissions carefully, along with the applicable law, and conclude that the Motion should be provisionally granted, and the disputed information delivered for *in camera* review.

**1.    Background**

In this diversity action Plaintiff, the personal representative of the estate of David Knowlton, sues Marriott International and a number of other corporate entities for the wrongful death of Mr. Knowlton. According to the Amended Complaint, on August 19, 2007, while visiting the Abaco Club, a Bahamian resort owned by Defendant Abaco Holding,

and operated or managed by the other named Defendants, Mr. Knowlton fell to his death from an overlook on a cliff. [DE 8, p. 7, ¶ 11]. Plaintiff alleges that Defendants are responsible for Mr. Knowlton's accidental death because they failed to warn and protect guests, such as Mr. Knowlton, from the dangers of that overlook. [*See generally* DE 8]. In their Answer, Defendants raise an affirmative defense, among others, that Mr. Knowlton "caused his own death, either negligently or intentionally." [DE 60, p. 7, *Tenth Affirmative Defense*].

Defendants issued document requests and an interrogatory designed to discover the nature of any mental health care Mr. Knowlton may have received. Plaintiff objected to those requests and Defendants filed a motion to compel.[1] [DE 66, *Motion to Compel*]. The interrogatory asked Plaintiff to identify, *inter alia*, all mental health care providers and treatment centers who examined or treated Mr. Knowlton in the 10 years before his death "and state as to each the dates of examination or treatment and the condition or injury for which he was examined or treated." [DE 66, p. 7, *Interrogatory No. 1*]. The document requests asked, in relevant part, for all medical records or evaluations "relative to any and all medical care or treatment, physical or psychological received by David Knowlton" in the ten years before his death. [DE 66, p. 12, *Request No. 9*].[2] Plaintiff objected that the information

---

[1] The Motion to Compel also addressed other disputed discovery requests.

[2] Document Request No. 2 also sought medical, hospital, therapist, counselor and psychologist and physician records and evaluations for each "physician or health care professional" who treated Mr. Knowlton in the three years before his death. [DE 66, p. 11]. While my written order granted that request, my order was limited to physical rather than mental health records, as

sought is protected by privilege, and that the 10-year time-frame is overbroad.

I held a discovery hearing and after hearing counsel's argument I ordered that Plaintiff answer the interrogatory, for the five year period before Mr. Knowlton's death, and denied without prejudice the document request. [DE 81, *Order following discovery hearing*]. In doing so, I wanted Plaintiff to identify for Defendants any mental health care providers who treated or evaluated Mr. Knowlton, but I was not prepared, on the record before me at that time, to order Plaintiff to disclose confidential records of mental health care. If Mr. Knowlton had in fact received such care, I directed the parties to more fully brief the issues. What followed was Defendants' Renewed Motion to Compel, now before the Court.

**2.     Renewed Motion to Compel**

Defendants argue that they have a good faith basis upon which to question whether Mr. Knowlton took his own life, and to discover records of any mental health care or evaluation Mr. Knowlton may have received that may shed light on that question. As stated more fully in the Renewed Motion, Defendants point to evidence that: (1) Mr. Knowlton walked off by himself at the time of this fall, such that there were no witnesses; (2) Mr. Knowlton was taking prescribed anti-depressant and anxiety medication, and had been drinking alcohol, at the time of his death; (3) Mr. Knowlton had discovered, not long before his death, that his wife was having an affair, and had been upset by this; (4) authorities who investigated Mr. Knowlton's death questioned whether it could have been the result of

---

stated at the hearing.

suicide; and (5) there are no reports of anyone else having fallen off that cliff. [DE 98, pp. 1-2; DE 109, p. 3, n. 4]. Plaintiff challenges some of these factual assertions, referencing evidence that Mr. Knowlton was not despondent at the time of his death, and counters that Defendants have supplied "nothing but flimsy and unsupported speculation to justify invading Mr. Knowlton's privileged communications with his therapist." [DE 104, p. 3].

I find that at this stage in the litigation Defendants have fairly raised the defense that Mr. Knowlton took his own life. In making this finding I offer no opinion as to the merits of that defense, and acknowledge that it does require speculation on the Defendants' part, as there is no direct evidence that Mr. Knowlton committed suicide. Nevertheless, Defendants' have put forth an adequate factual basis upon which to proceed with discovery directed to that defense. Thus, as a general proposition, records of mental health care provided to Mr. Knowlton at or leading up to the time of his death, "appears reasonably calculated to lead to the discovery of admissible evidence." F. R. Civ. P. 26(b)(1). I find, however, that the request for ten years of records is overbroad.[3] That being said, if the records are protected by an evidentiary privilege, they are not discoverable at all.

Federal Rule of Evidence 501 directs that in diversity actions state law determines the applicable privilege. Fed. R. Evid. 501. Florida recognizes a psychotherapist-patient privilege. Fla. Stat. § 90.503 (2). However, the Florida statute provides that "there is no

---

[3] I order here that Plaintiff produce three years of records for my review. After conducting that review, if I do order disclosure to the Defendants, I may further limit the timeframe of that disclosure.

4

privilege . . . [f]or communications relevant to an issue of the mental or emotional condition of the patient . . . after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense." Fla. Stat. § 90.503 (4)(c). Defendants rely upon this provision to ask the Court to order the disclosure of Mr. Knowlton's mental health records. Having found that Defendants rely upon Mr. Knowlton's mental or emotional condition as an element of their defense, I find that if Florida law governs Mr. Knowlton's communications with his therapist, that information is subject to discovery.

Plaintiff counters that Mr. Knowlton and his therapist were both Georgia residents, that this is where they met and communicated, and therefore Georgia has the most significant relationship with these communications and the Georgia law of privilege thus applies. Interestingly, Georgia law provides "exceedingly strict" protection of psychotherapist-patient communications. *Mrozinski v. Pogue*, 423 S.E.2d 405, 409 (Ga. Ct. App. 1992). Communications between a patient and a psychiatrist, licensed psychologist and other enumerated mental health care providers are privileged under Georgia law, OCGA § 24-9-21 (2010), and that law does not recognize waiver or otherwise limit the reach of that privilege. *See* OCGA § 24-9-40 (a) and § 43-39-16; *see also Dynin v. Hall*, 207 Ga. App. 337 (Ga. Ct. App. 1993) (noting that psychiatrist-patient privilege may not be deemed waived merely because the patient's care and treatment has been put at issue in a lawsuit). Relying on Georgia law, Plaintiff argues that the disputed discovery is absolutely protected from

discovery. I find that if Georgia law is controlling here, Mr. Knowlton's communications with his therapist are protected from disclosure.

Both parties acknowledge that given this conflict between the Florida and Georgia laws of privilege, this Court must resort to a conflict of law analysis. Again, Rule of Evidence 501 sets our direction by requiring this Court to apply the law of the forum state, Florida, as to choice of law rules. *Anas v. Blecker*, 141 F.R.D. 530, 531 (M.D. Fla. 1992). Florida resolves choice of law questions for torts according to the test outlined in Restatement (Second) of Conflict of Laws. *Id*. at 532; *Rashid v. Barr Laboratories, Inc.*, Case No. 6:08-cv-1468-Orl-31GJK, 2008 U.S. Dist. LEXIS 102676 * 4-5 (M.D. Fla. 2008). The Restatement Second § 139 provides, in relevant part:

> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication [here, Georgia] but which is not privileged under the local law of the forum [here, Florida] will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

Restatement (Second) of Conflict of Laws (1989) § 139(2) (parentheticals added). To restate the Restatement then, Mr. Knowlton's communications with his therapist which are privileged in Georgia (the state with the most significant relationship with the communication), but are not privileged in Florida (the forum state), must be produced in discovery in this lawsuit unless there is some reason why Florida's policy favoring admission should not be given effect.

The commentary to Section 139(2) identifies four factors this Court should consider

6

in resolving whether "there is some reason why" the Florida law requiring disclosure should not apply: "(1) the number and nature of the contacts that the state of the forum has with the parties and the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties." *Id*. Comment (d). *See Anas*, 141 F.R.D. at 532 (applying factors).

In their memoranda the parties have offered no information regarding the first factor, but from what I can tell from the record, this factor weighs in favor of the Plaintiff. Mr. Knowlton was a resident of Georgia [DE 8, p. 2, ¶ 4], I am aware of no specific contacts he had with Florida, and we have been told that all of his communications with his therapist took place in Georgia.

The second factor, the materiality of Mr. Knowlton's communications with his therapist is impossible for me to fairly assess, in this instance, without reading those records. Depending upon what they contain, they may be highly material to the question of whether Mr. Knowlton was likely to have taken his own life, or they may shed little light on the question.

The third factor is the kind of privilege involved. The commentary states: "the forum will be more inclined to give effect to a foreign privilege that is well established and recognized in many states than to a privilege that is relatively novel and recognized in only a few states." Restatement (Second) of Conflict of Laws, § 139(2), cmt. d. This language is not particularly helpful here, as both states recognize the psychotherapist-patient privilege.

7

The difference here is that Florida limits the application of that privilege in this circumstance, whereas Georgia does not, and thus I believe the question here is whether Florida's limitation on the privilege is well established, as opposed to Georgia's broad application of that privilege. The parties have not briefed this issue, and I have not engaged in a state-by-state survey of the question, but my sense is that it is not unusual for legislatures and courts to find that privilege gives way under circumstances such as these. Thus, while not dispositive, I believe this factor weighs somewhat in favor of Defendants.

The final factor is the all-important, and difficult-to-define "fairness to the parties." Once again it is impossible to "fairly" assess this factor without having seen the disputed information. Taking an easy example, if the records document suicidal ideation by Mr. Knowlton shortly before he left for the Bahamas, this clearly would be material and fairness would weigh in favor of disclosure. Taking another easy hypothetical, if the records give no indication of suicidal thought, but contain highly personal and potentially embarrassing information about a family member that Mr. Knowlton disclosed to his therapist, disclosure would seem unfair.

Summing it up, the second and fourth factors are most important to the application of the Restatement in this instance, and I do not believe I can fairly assess those factors in a vacuum. Put differently, Plaintiff has not shown that "there is some special reason why the forum policy favoring admission should not be given effect." *Id.* Therefore, I direct Plaintiff to produce for me all responsive discovery, for *ex parte* and *in camera* inspection. Plaintiff

shall produce responsive information, to the extent it exists, for the three-year period before Mr. Knowlton's death. Once I review those records I will issue a final order resolving the pending motion.

**3.   Conclusion**

For the reasons given, this Court ORDERS that Plaintiff's Renewed Motion to Compel Plaintiff to produce the mental health records of David Knowlton [DE 98], is **provisionally granted.** Counsel for both parties shall talk and agree as to what responsive discovery is outstanding,[4] and Plaintiff shall deliver that information to my chambers for *ex parte, in camera* review, **no later than Friday, November 12, 2010**.[5]

DONE AND ORDERED in chambers at Miami, Florida this 2nd day of November, 2010.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Adalberto Jordan
       All counsel of record

---

[4] It is not clear to me whether the Renewed Motion to Compel addresses Interrogatory No. 1, or only the document requests, and whether, in light of this Order and the discovery issued to date, the parties might agree to more specifically define the discovery sought. It is also not clear to me whether pending this Order Defendants have issued, or given notice of their intent to issue, third-party subpoenas to mental health care providers. The parties are directed to meet and confer, so that I am provided all responsive records at one time, as I do not want receive this information in a serial fashion.

[5] The earlier Plaintiff delivers this information, the earlier I can resolve this matter.