

**FILED BY** _____ *HH* _____
Deputy Clerk

*May 20, 2014*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 20, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  12-15739-BB
Case Style: R. Collins v. Marriott International, Inc., et al
District Court Docket No: 1:09-cv-22423-UU

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Regina A. Veals-Gillis
Phone #:  (404) 335-6163

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 12-15739

_____

District Court Docket No.
1:09-cv-22423-UU

R. TRAVIS COLLINS,
as Personal Representative of the
Estate of David Knowlton, deceased,

               Plaintiff - Appellant,

versus

MARRIOTT INTERNATIONAL, INC.,
a Maryland corporation,
               Defendant,

THE RITZ-CARLTON MANAGEMENT COMPANY, LLC,
a Maryland corporation,
RC ABACO HOLDING COMPANY, LTD,
a foreign corporation, et al.,

               Defendants - Appellees,

THE RITZ-CARLTON HOTEL COMPANY, LTD,
a foreign corporation,
THE ABACO CLUB ASSOCIATION, LTD.,
a foreign corporation,
THE ABACO CLUB RC, LTD., et al.,

               Defendants -
               Third Party Plaintiff -
               Appellees,

D.SCOTT LIBERTORE,

               Defendant -
               Third Party Defendant.

_____

Appeal from the United States District Court for the

ISSUED AS MANDATE:  05/20/2014

Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: April 14, 2014
For the Court: John Ley, Clerk of Court
By: Djuanna Clark

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15739
_____

D.C. Docket No. 1:09-cv-22423-UU

R. TRAVIS COLLINS, as Personal Representative of the Estate of DAVID
KNOWLTON, deceased,

Plaintiff-Appellant,

versus

MARRIOTT INTERNATIONAL, INC., a Maryland corporation,

Defendant,

THE RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Maryland
corporation, RC ABACO HOLDING COMPANY, LTD., a foreign corporation, et
al.,

Defendants-Appellees,

THE RITZ-CARLTON HOTEL COMPANY, LTD, a foreign corporation, THE
ABACO CLUB ASSOCIATION, LTD., a foreign corporation, THE ABACO
CLUB RC, LTD., et al.,

Defendants-Third Party Plaintiff-Appellees,

D.SCOTT LIBERTORE,

Defendant-Third Party Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 14, 2014)

Before MARCUS, FAY, and WALKER,[*] Circuit Judges.

WALKER, Circuit Judge:

Although there were no witnesses, David Knowlton, a property owner at the Abaco Club, apparently fell to his death from a rocky cliff adjacent to the defendants' Abaco Club property on the island of Abaco in the Bahamas.  R. Travis Collins brought this action alleging that the defendants breached their duty to exercise reasonable care to protect the safety of Knowlton as an invitee while on defendants' property.  Following a trial in the District Court for the Southern District of Florida, a jury found defendants one percent negligent and Knowlton ninety-nine percent negligent, and awarded no damages.  The district judge then granted defendants' motion for judgment as a matter of law and denied plaintiff's motion for a new trial.  We REVERSE and REMAND for a new trial on all issues.

## BACKGROUND

The Abaco Club is a private golf club located on the island of Abaco in the Bahamas.  Knowlton was a member of the Abaco Club and owned a cottage on the

_____

[*] Honorable John M. Walker, Jr., United States Court of Appeals for the Second Circuit, sitting by designation.

Club's property.  The Club is located on a peninsula ending at a rocky promontory known as "the Point."  The Point is not owned by the Abaco Club but is only accessible by land from Club property.  Prior to the events of this case, there was no fencing or signage demarcating the Point from the Club's property.

The Point is comprised of uneven volcanic rock formations, cliffs that drop into the ocean, and a blowhole that waves crash through.  A golf cart path on the Club's property intersects with a rough path that leads from the Club property to a crest overlooking the Point.  The crest is approximately 50 feet from the golf cart path and 200 feet from the farthest tip of the Point.

On the evening of August 19, 2007, Knowlton and three male friends who were staying with Knowlton for a long weekend took a golf cart to the Point to take pictures of the sunset.  According to one friend, they had intended to take pictures from the crest overlooking the Point but because the view of the sunset was good from the golf cart path, they first stopped there.  Knowlton then left the others and walked up the path towards the crest.  The other three decided to meet Knowlton on the Point when they were finished taking pictures.

Somewhere between two and ten minutes later, Knowlton's friends walked up to the crest to meet Knowlton but he was nowhere to be seen.  One friend testified that there was nobody on the Point and, had there been, he would have seen him.  The friends immediately went for help from Club staff and began

3

searching, unsuccessfully, for Knowlton.  The following day, Knowlton's body was found in the water in a cove two-and-a-half miles from the Club.  The death certificate listed the cause of death as "polytrauma with intracranial hemorrhage and fracture of ribs/injury upper and lower extremities."  *Collins v. Marriott Int'l Inc.*, No. 1:09-cv-22423, slip op. at 10 (S.D. Fla. Oct. 11, 2012).

At the trial, plaintiff alleged that the defendants were negligent in (1) failing to maintain the property on the Point; (2) failing to provide adequate warnings about dangerous conditions on the Point; and (3) failing to prohibit residents and guests at the Abaco Club from accessing the Point.

Regarding damages, plaintiff submitted evidence that Knowlton, who was 53, had two children at the time of his death: a ten-year-old daughter, Grace, and a two-and-a-half-year-old son, Greyson.  Grace lived with her mother, who had been divorced from Knowlton since 2001, and her step-father.  Greyson lived with Knowlton and his mother, Knowlton's wife.  Knowlton saw his children regularly and his death affected them.  An expert for the plaintiff testified to $10.6 million in economic damages: $6.2 million for Greyson's loss of support; $59,294 for Greyson's loss of services; $169,171 for Grace's loss of support; and $4.1 million for the Estate's net accumulations.[1]  The defendants did not present any evidence on

---

[1] Plaintiff's expert testified that "loss of services" relates to things done around the house by family members for the benefit of a child such as cooking, cleaning, repairs, and maintenance. Plaintiff's expert also testified that there is a large disparity between Greyson's and Grace's loss

damages.

Three-and-a-half hours after the case was submitted to the jury, the jury sent the following note to the judge: "We tried to settle (to agree) this case.  We are unable to come to a 100% agreement!"  Exhibits & Jury Notes 3, July 25 2012, ECF No. 415.  The court responded that the jury should keep deliberating.  Forty-five minutes later, the jury asked the judge, "Can we find the defendants negligent with an award to the plaintiff (estate) of $0?"  *Id.* at 5.  The court responded: "You must find whatever is fair and reasonable in light of the evidence."  *Id.*  Seventeen minutes later, the jury returned a verdict finding defendants one percent liable and Knowlton ninety-nine percent liable, and awarding the estate zero dollars in damages.

Following the jury verdict, both sides moved pursuant to Rule 50(b) for judgment as a matter of law. In addition, the plaintiff moved for a new trial on the basis that the verdict was an impermissible compromise, that toxicology evidence was erroneously admitted, and that the district court erred in its jury instructions on Knowlton's status as an invitee.  The district judge granted defendants' motion for

---

of support because Greyson was living with Knowlton when he died while Grace was living with her mother and step-father.  Trial Tr. 452:19–453:14, July 18, 2012, ECF No. 421.  Mr. Collins, the personal representative of Knowlton's estate, testified that Knowlton's 49% interest in a company called Stratix was sold for the benefit of the estate but its value was not provided.  *Id.* at 579:5–581:4.  Such value, however, would not detract from plaintiff's expert's loss calculation, which was based on lost wages earned by Knowlton had he lived and worked until the age of 65, not assets that he already owned.

judgment as a matter of law, denied plaintiff's motion for the same and denied plaintiff's motion for a new trial. *Collins*, No. 1:09-cv-22423, slip op. at 30. This appeal followed.

## DISCUSSION

### I.    Judgment as a Matter of Law for Defendants on Duty and Causation

"We review *de novo* a district court's grant of judgment as a matter of law, applying the same standard as the district court." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005). "A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Id*. "The question before the district court regarding a motion for judgment as a matter of law remains whether the evidence is 'legally sufficient to find for the party on that issue.'" *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting Fed. R. Civ. P. 50(a)(1)). "[T]he court should review all of the evidence in the record," but in doing so, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The parties agreed at trial that Florida supplies the substantive law in this diversity action notwithstanding that the claim arose in the Bahamas.

### A.   Defendant's Duty and Breach

The parties also do not dispute that Knowlton was an invitee on the Club's property.  "[A] property owner owes two duties to an invitee, [(1)] to use reasonable care in maintaining the premises in a reasonably safe condition and [(2)] to give the invitee warning of concealed perils which are or should be known to the property owner, and which are unknown to the invitee and cannot be discovered by him through the exercise of due care." *Fieldhouse v. Tam Inv. Co.*, 959 So. 2d 1214, 1215 (Fla. 4th DCA 2007) (quoting *Fenster v. Publix Supermarkets, Inc.*, 785 So. 2d 737, 739 (Fla. 4th DCA 2001)).

As part of the duty to maintain the premises in a reasonably safe condition, a property owner also has a duty to maintain the property to prevent foreseeable risks that exist on adjacent property.  This is true because the "duty element of a negligence action focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Almarante v. Art Inst. of Fort Lauderdale, Inc.*, 921 So. 2d 703, 705 (Fla. 4th DCA 2006) (quoting *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005)). Accordingly, a "landowner's conduct can give rise to a zone of risk extending beyond the physical boundaries of his property when harm reaching outside those boundaries is foreseeable." *Id*.

In *Almarante*, the plaintiff was struck and injured by a motorcycle while

crossing a highway that ran between two school dormitory buildings that she frequented as a student. *Id*. at 704. The defendant moved to dismiss on the basis that it had no legal duty to provide a reasonably safe passage across property that it did not own. *Id*. The *Almarante* court held that plaintiff's complaint stated a valid cause of action because the school created a foreseeable zone of danger for its students by building its dormitory on either side of a busy highway without taking steps to ensure their safe passage. *Id*. at 705; *see also Bailey Drainage Dist. v. Stark*, 526 So. 2d 678, 682 (Fla. 1988) (per curiam) (holding that even if overgrown brush causing a dangerous condition for passing motorists was "located on privately owned property so that removal is not an option, the [defendant] still has a duty to warn of the danger"); *Gunlock v. Gill Hotels Co.*, 622 So. 2d 163, 164 (Fla. 4th DCA 1993) (holding that a hotel built adjacent to a highway "owed a duty to exercise reasonable care for the safety of its invitees in passing over the highway to and from appellee's hotel facilities").

In this case, it is undisputed that the Point is only accessible from the Abaco Club property that defendants purchased and developed for use by invitees such as Knowlton. It is also undisputed that the Point presented foreseeable risks to those who entered it. There was also evidence that Abaco Club employees knew that its guests frequented the Point. Because the Point is a foreseeable danger made accessible by defendants in developing the adjacent Abaco Club, the defendants,

8

while they had no duty to maintain the Point property that they did not own, had a duty to maintain their own Club property in a reasonably safe manner to protect its invitees against that danger.[2]

Defendants contend that they owed Knowlton no such duty because "the risks associated with the Point are inherent in the natural landscape, open and obvious and just as foreseeable to [Knowlton] as to Defendants."  Appellee Br. 26. This argument, however, ignores the nature of the defendants' duty here. "[A]lthough the open and obvious nature of a hazard may discharge a landowner's duty to warn, it does not discharge the duty to maintain the property in a reasonably safe condition.  A plaintiff's knowledge of a dangerous condition simply raises the issue of comparative negligence and precludes summary judgment."  *Fieldhouse*, 959 So. 2d at 1216 (internal quotation marks and citations omitted).

The district court, in granting defendants' motion for judgment as a matter of law, stated that "an owner has no duty to warn where the danger is obvious and apparent, or the invitee otherwise has knowledge of the danger which is equal to or superior to the owner's knowledge."  *Collins*, No. 1:09-cv-22423, slip op at 13. This statement of the law, however, focuses only on the duty to warn.  It fails to

---

[2] Indeed, this was precisely plaintiff's theory of the case at trial.  Following the presentation of evidence at trial, the court summarized the position of plaintiff's counsel: "Mr. Parks does not maintain that the Ritz should have done anything on the Point to fix the property. . . . Mr. Parks contends that the Ritz should have put a fence or warning sign on the Ritz's own property saying [don't] go out to the Point.  Right, Mr. Parks?"  Plaintiff's counsel responded, "Correct."  *Collins*, No. 1:09-cv-22423, slip op at 3 n.4 (alterations in original).

consider the defendants' separate duty to use ordinary care to maintain the Abaco Club property in a reasonably safe manner to protect against foreseeable dangers on the Point by means other than posting a warning. The district court thus erred in granting judgment as a matter of law to the defendants on the duty owed to Knowlton as an invitee.

The district court's instructions to the jury were also erroneous in a similar respect. The district court instructed that the preliminary issue for the jury is whether David Knowlton was defendants' invitee when on the Point, and after explaining the duties owed to invitees and non-invitees, instructed that it was "undisputed that the [d]efendants did not own the Point." Jury Instructions 8-9, July 25, 2012, ECF No. 404. These instructions pointed the jury in the wrong direction: the question was not whether defendants owed to Knowlton a duty as an invitee while he was on the Point—plainly they did not—but whether the defendants owed a duty to Knowlton as an invitee on Abaco Club property. The instructions also failed to accurately explain defendants' duty to use ordinary care to maintain the Abaco Club property in a reasonably safe manner to protect its invitees against foreseeable dangers on the Point.

## B. Inferring Causation

The district court also granted judgment as a matter of law to defendants because plaintiff failed to establish that defendants' negligence caused Knowlton's

death without relying on an "impermissible stacking of inferences" by the jury. "Inferences may be pyramided only if the initial inference is established to the exclusion of any other reasonable theory." *Hurst v. Astudillo*, 631 So. 2d 380 (Fla. 3d DCA 1994). In the district court's view, the initial inference for plaintiff's case—that Knowlton encountered a danger on the Point about which defendants had superior knowledge—was not established to the exclusion of other theories.

Impermissible inferences only exist, however, when no direct evidence is presented on negligence or causation and a jury infers causation based on an inference of negligence. *See McCormick Shipping Corp. v. Warner*, 129 So. 2d 448, 449 (Fla. 3d DCA 1961) (finding impermissible stacking of inferences where the "jury was required under the circumstances to infer that there was negligence on the part of the appellant in providing a defective or inadequate ladder and upon that inference, to infer further that such negligence was the proximate cause of the fall"). In another ladder case, *Hurst v. Astudillo*, the plaintiff was injured while climbing defendant's ladder. 631 So. 2d at 381. Although there was no evidence that the ladder was defective, that its placement created a dangerous condition, or why the ladder slipped, the trial judge found negligence and proximate cause. *Id.* This was an impermissible pyramid of inferences because it required the trial court to infer negligence and that such negligence was the proximate cause of plaintiff's injury. *Id.* (citing *McCormick Shipping Corp.*, 129 So. 2d at 449-50). The *Hurst* court

concluded: "Simply stated, [plaintiff's] fall, standing alone, cannot support a finding of [defendant's] liability." *Id.* at 381.

This is not the case here.  As discussed in the preceding section, defendants owed Knowlton a duty of reasonable care to protect him against the foreseeable zone of risk that the parties do not dispute existed on the Point.  Once the jury finds a breach of that duty, i.e., negligence, there is only one inference required of the jury: that Knowlton was killed by conditions on the Point.  Plaintiff submitted evidence that allowed the jury to find that it was more likely than not that this was the case: that Knowlton's friends were unable to find him minutes after he walked onto the Point and that the following day his damaged body was found in a cove some distance away.  Based on this evidence, the jury was free to infer a causal nexus between the negligence and the harm.  Thus, the district court erred in granting to defendants judgment as a matter of law following the trial.

## II.   Toxicology Evidence

Evidentiary rulings are reviewed under an abuse-of-discretion standard. *Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993).  In order to justify granting a new trial, an error must have affected "substantial rights"; otherwise, the error is harmless.  *Id.*

Dr. William Hearn of the Miami-Dade Medical Examiner's Office testified at trial that a sample of Knowlton's urine received from authorities in the Bahamas

contained 0.22% alcohol.  The plaintiff contends that this evidence should have been excluded because it was irrelevant and it incorrectly suggested that urine alcohol levels are the same as blood alcohol levels, which would imply that Knowlton was severely intoxicated when he died.

This evidence was properly admitted because it had probative value and was not unduly prejudicial.  Evidence of plaintiff's intoxication is normally relevant in tort cases, particularly when the law uses a comparative negligence standard for apportionment of liability.  *See Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1531 (11th Cir. 1990); *see also Collins*, No. 1:09-cv-22423, slip op at 25 ("Plaintiff fails to recognize that Defendants used the measurement only to corroborate their contention that Knowlton's own negligence contributed to his death because he had been drinking before his fall—not to prove any particular level of intoxication associated with a legal standard.").

The urine alcohol level evidence was not unduly prejudicial because there was little risk that it could be mistaken for evidence of the more familiar blood alcohol level.  The district court correctly found, and the plaintiff ignores on appeal, that "neither Plaintiff's expert . . . nor Dr. Hearn . . . testified that 0.22% urine alcohol concentration rendered Knowlton intoxicated.  And both of these witnesses testified that urine alcohol content cannot be correlated to blood alcohol concentrations."  *Collins*, No. 1:09-cv-22423, slip op at 25.  Of course, the plaintiff

could have requested an instruction to the jury on the difference between alcohol levels in blood and urine, but he did not do so.  Admitting the evidence was not error.

## III.  Compromise Verdict

The plaintiff argues that the jury's verdict in this case was a compromise verdict that conflated liability and damages.  We review for abuse of discretion a district court's denial of a motion for a new trial based on the verdict being an improper compromise.  *Mekdeci ex rel. Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1513 (11th Cir. 1983).  Federal law governs the decision whether or not to grant a new trial, but an issue of the sufficiency of damages awarded for a state claim is decided under state law.  *Hattaway v. McMillian*, 903 F.2d 1440, 1451 (11th Cir. 1990).

A motion for a new trial under Fed. R. Civ. P. 59 must be granted "when the issues of liability and damages were tried together and there are indications that the jury may have rendered a compromise verdict."  *Mekdeci*, 711 F.2d at 1513 (quoting *Lucas v. Am. Mfg. Co.*, 630 F.2d 291, 294 (5th Cir. 1980)) (internal quotation marks omitted).  "A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages.  However, an insufficient damages verdict, standing alone, does not necessarily indicate a compromise.  Ordinarily there must

be other evidence demonstrating that the deficient monetary award resulted from an impermissible compromise." *Id*. at 1513-14 (internal citations omitted).

The jury found zero dollars in damages despite being instructed by the district court to determine the total amount of loss suffered by Knowlton's estate without adjusting for any percentages of comparative fault it may have found. The plaintiff's expert estimated a total loss to Knowlton's estate of $10.6 million. Further, there was significant evidence of Knowlton's close relationship with Grace, even though she lived with her mother, in support of non-economic damages. Defendants submitted no evidence related to damages. It was the jury's job to find the total damages and the percentage of defendant's contribution to the loss. It was for the court to then apply that percentage to the total damages. Plainly, the jury's finding of zero dollars in damages resulting from Knowlton's death is drastically deficient. *See Miami-Dade Cnty. v. Merker*, 907 So. 2d 1213, 1215 (Fla. 3d DCA 2005) (noting that "where the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law"); *see also Westminster Cmty. Care Servs., Inc. v. Mikesell*, 12 So. 3d 838, 842 (Fla. 5th DCA 2009) (holding "the damages award of zero dollars was clearly inadequate in light of the substantial evidence at trial of economic and noneconomic damages" resulting from husband's wrongful death);

*Snoozy v. U.S. Gypsum Co.*, 695 So. 2d 767, 768 (Fla. 3d DCA 1997) (holding zero-damages award inadequate because "substantial, undisputed, and unrebutted testimony" showed that deceased father "had a close relationship with his children, and that [the children] suffered a great loss as a result of their father's death").

The district court stated that the jury's award of damages was not inadequate as a matter of law because the parties did not stipulate to a minimum amount of damages and the evidence at trial did not indisputably set a range of monetary recovery. But there need not be an agreed-upon damages range for an award to be inadequate. *See Mekdeci*, 711 F.2d at 1514 (finding that the zero dollars in damages awarded by the jury to an injured child was inadequate because defendant never disputed the child's damages and the evidence was uncontroverted).

The other required indicia of a compromise verdict are also present here. *See Westminster*, 12 So. 3d at 842 (holding that there was an impermissible compromise where the damages award was inadequate, liability was "hotly contested" at trial, the jury was deadlocked, the court charged the jury to continue deliberating to reach a decision, and less than one hour later the jury returned a verdict); *Newalk v. Florida Supermarkets, Inc.*, 610 So. 2d 528, 529 (Fla. 3d DCA 1992) (holding that there was an impermissible compromise because the damages award was inadequate and "liability was hotly disputed by the parties and struggled over by the jury"); *see also Burger King Corp. v. Mason*, 710 F.2d 1480, 1488 (11th Cir. 1983)

(finding no compromise verdict because the jury consistently rejected the defendants' affirmative defenses, was not deadlocked, and did not attempt to qualify its verdict or request additional instructions).  Liability was hotly contested by the parties at trial.  The jury, in a note to the district judge, stated that it was unable to come to an agreement.  After being told to keep deliberating, and only forty five minutes later, the jury asked whether it could find defendants negligent but award zero dollars to the plaintiff.  Seventeen minutes after the judge responded by telling it to find a verdict that is "fair and reasonable," the jury rendered its verdict.

In *Mekdeci*, the Eleventh Circuit found the verdict to be an impermissible compromise and remanded for a new trial because the jury's award was inadequate, liability was "strongly contested," the jurors made clear that they could not reach agreement on liability, and the jury attempted to qualify its verdict by asking to explain its reasons to the parties.  711 F.2d at 1514-15.  Most importantly, the jury stated to the judge that it was "hopelessly deadlocked," yet returned a verdict shortly after receiving an *Allen* charge.  *Id*. at 1515.  As in *Mekdeci*, the jury here professed to be deadlocked shortly before returning a verdict finding defendants negligent and making a damages finding that was not supported by the evidence.  Moreover, liability was strongly contested at trial.  Contrary to the district court's suggestion, the contest over liability need not be "exceptional" to support a finding

that the jury reached an impermissible compromise, and the fact that the jury found the defendants only 1% liable does not show that there was a lack of contest over liability. Indeed, the jury's question to the judge—asking whether it could find liability but award zero damages—suggests that some members of the jury may have gone along with a finding of liability only if accompanied by an award of zero damages. The district court abused its discretion here in not finding that the verdict was the result of an impermissible compromise.

Defendants argue that if a compromise verdict is found, any new trial should be limited to damages only. Defendants, however, misread our case law on compromise verdicts. "[A] jury verdict influenced by an improper compromise cannot stand and a complete new trial is required because liability and damages are inseparable. Hence, if there is a compromised finding on liability, a separate trial on damages alone will not suffice—both liability and damages must be relitigated in a new trial." *Burger King Corp.*, 710 F.2d at 1486 (internal citations omitted). Accordingly, plaintiff is entitled to a new trial on both liability and damages.

## CONCLUSION

For the reasons stated above, we REVERSE the district court's grant of judgment as a matter of law for defendants and, consistent with this opinion, REMAND for a new trial on all issues.